UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID M. HODIERNE,

    Applicant,

v.                                     CASE NO. 8:23-cv-336-SDM-CPT

SECRETARY, Department of Corrections,

    Respondent.

_____/

## **ORDER**

Hodierne applies (Doc. 1) under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges his conviction for home invasion with a firearm while wearing a mask, for which Hodierne is imprisoned for life. Numerous exhibits ("Respondent's Exhibit") support the response. (Doc. 14)[1] The respondent admits the application's timeliness (Doc. 13 at 15 n.4) but argues both that some grounds fail to assert a federal claim and other grounds are procedurally barred from federal review.

## **I. BACKGROUND[2]**

Soon after midnight on July 9, 2011, John Panteloukas (the victim) was awakened when his bedroom door was kicked in and two people entered. Each person

---

[1] The state court record (Doc. 14) comprises fifty numbered exhibits and encompasses more than eighteen-hundred pages. This order cites to the page numbers as designated by CM/ECF for docket number 14.

[2] This summary of the facts derives from Hodierne's brief on direct appeal. (Respondent's Exhibit 2)

wore a ski mask that revealed only the mouth and eyes.  One of the assailants held a "tire iron" and asked where the victim stored his valuables.  The victim stated that the items were inside a safe.  When the victim attempted to retrieve a weapon from a nightstand, the assailant struck the victim on the forehead with the "tire iron."  During the incident the victim was struck with the "tire iron" three times on the head and two times across his back.  While trying to open the safe after the victim provided the combination, the second assailant lifted his ski mask above his eyes and the victim saw the assailant's face.  From the safe the assailants removed gold and silver coins, jewelry (including diamond rings and gold chains), two guns, special silver certificate dollar bills, two-dollar bills, and about $4,500 cash.  Other items taken from inside the bedroom included a collectible .45 caliber gun and binoculars still in their original box.  Before leaving, the assailants used the bed sheets to restrain the victim, taped his hands, and broke both the house telephone and the victim's cellular telephone.  The victim managed to free himself, went to a neighbor's house, and called the police.  The police arrived and found both the window on the backdoor and the bedroom door "smashed."

The next day the victim met with a police artist to prepare a composite sketch of the face of the assailant who had lifted his mask.  And on the following day the victim was shown several photographs of possible suspects, but the victim was unable to select a photograph as depicting one of the assailants.

Four months later Hodierne revealed to his sister-in-law and mother-in-law — people with whom Hodierne was sharing a home — that inside the safe in his room he had a diamond, old money, coins, two-dollar bills, and antique guns that he and

another had stolen during a robbery they committed in Holiday, Florida, which is the same locale where the victim lived.

Police later obtained a search warrant for Hodierne's safe and seized many items, including items matching the victim's description of the valuables stolen from him. After viewing the items seized from Hodierne's safe, the victim identified a range bag and gun case, the boxed range binoculars, silver certificate dollar bills, and several two-dollar bills as some of the valuables stolen by the assailants.  At trial the victim identified Hodierne as the assailant who lifted his mask.  (Respondent's Exhibit 1a at 327–28)  Ultimately Hodierne was convicted and sentenced.

## II.  CLAIMS NOT REVIEWABLE ON THE MERITS

### A.  NO FEDERAL CLAIM

The respondent argues that several of Hodierne's claims fail to assert a federal claim reviewable in an application under Section 2254 for the writ of habeas corpus. Section 2254(a) limits federal habeas corpus review to only an allegation "that [the applicant] is in custody in violation of the Constitution or laws or treaties of the United States."  As a general principle, an alleged violation of state law fails to assert a constitutional issue, as *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010), explains:

> But it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  And we have repeatedly held that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S., at 67–68, 112 S. Ct. 475.

## B. EXHAUSTION

The respondent argues that several of Hodierne's claims are unexhausted and procedurally defaulted. An applicant must present each claim to the state courts before presenting the claim to a federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) (citing *Duncan*).

Also, an applicant must present each claim to the state court in the procedurally proper manner, as *Magwood v. Patterson*, 561 U.S. 320, 340 (2010), explains:

> A petitioner may not raise in federal court an error that he failed to raise properly in state court in a challenge to the judgment reflecting the error. If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention — whether in trial, appellate, or habeas proceedings, as state law may require — procedural default will bar federal review.

*See also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (The "failure to present three of his federal habeas claims to the [state court] in a timely fashion has resulted in a procedural default of those claims."). A party does not fairly present a claim if he presents the claim in state court for the first time in a procedural context in which the merits are not ordinarily considered. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).

### C. ALLEGED TRIAL COURT ERROR

**Ground Three**

Hodierne alleges that the trial court erred by excluding evidence of bias by state witnesses Tricia Lawson and Brandi Moser, and he contends that the error violated his "constitutional right to confront his accusers, due process, and a fair trial." (Doc. 1 at 8) On direct appeal Hodierne argued that excluding the testimony "denied Appellant his state and federal constitutional rights to confront his accusers, to due process of law, and to a fair trial. See Amends.VI, XIV, U.S. Const.; Art. I, §§ 9, 16(a), Fla. Const." (Respondent's Exhibit 2 at 747). At trial the state court sustained the state's objection to the testimony based on state law evidentiary reasons, specifically, relevance and hearsay. The defense counsel never argued in the trial court that excluding the testimony would violate his "constitutional right to confront his accusers, due process, and a fair trial." An argument is cognizable on appeal in Florida only when the contention before the appellate court is the same "specific contention asserted as legal ground for the objection, exception, or motion" in the lower court. *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982) (*per curiam*). *See Hutchinson v. State*, 17 So. 3d 696, 703 n.5 (Fla. 2009) (holding that a claim not presented to the lower court but raised for the

first time on appeal is an "unpreserved" claim) (*per curiam*).  Consequently, the constitutional basis for admission of the testimony is unexhausted because the constitutional basis was not preserved for review by the appellate court; only the state law basis for admission of the testimony was exhausted both at trial and on appeal.

As a general principle, federal habeas corpus relief is not available for an error of state law, and the admissibility of evidence in state court is largely a matter for the state to decide without federal intervention.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (stating that "our habeas powers [do not] allow us to reverse [a] conviction based on a belief that the trial judge incorrectly interpreted the" state's evidence rules); and *Burgett v. Texas*, 389 U.S. 109, 113–114 (1967) (recognizing that a federal petition for the writ of habeas corpus permits only limited authority to review a state court's evidentiary ruling.); *Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1299 (11th Cir. 2017) ("[I]t is not a federal court's role to examine the propriety of a state court's determination of state law.").

Rather, a federal court's inquiry into a state evidentiary ruling is limited to an examination of whether the state violated a federally guaranteed right, *Nordskog v. Wainwright*, 546 F.2d 69, 72 (5th Cir. 1977),[3] such as the denial of fundamental fairness. *Hall v. Wainwright*, 733 F.2d 766, 770 (11th Cir. 1984).  The category of infraction that

---

[3] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

violates fundamental fairness is narrowly defined. *Estelle v. McGuire*, 502 U.S. 62, 73 (1991). For the most part, an evidentiary ruling simply raises no question of constitutional magnitude, as *McCullough v. Singletary*, 967 F.2d 530, 535–36 (11th Cir. 1992), explains:

> A federal habeas petition may be entertained only on the ground that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981). State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases. *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. 1981).

Moreover, even if the exclusion was error, the error was harmless. During closing arguments defense counsel amply challenged the credibility of state witnesses Tricia Lawson and Brandi Moser despite the exclusion of Hodierne's proposed testimony of bias. (Respondent's Exhibit 1a at 674 and 677–78) Ground Three fails to assert a federal claim that is entitled to a review on the merits, and even if reviewed on the merits, Hodierne is entitled to no relief.

**Ground Four**

Hodierne alleges that the trial court erred in denying his motion for a mistrial when a detective testified that a warrant authorized the search of his safe. The trial court granted defense counsel's pre-trial motion to exclude evidence "regarding any . . . search warrants issued for the Defendant" (Respondent's Exhibit 1 at 117 ¶3) and agreed with the state's and defense's stipulation to advise the jury that "the contents of

the safe were lawfully seized." (Respondent's Exhibit 1a at 444)  The state's first rebuttal witness testified that he participated in a lawful search of Hodierne's residence. On direct examination of the state's second rebuttal witness, the prosecutor asked if the detective had "participate[d] in executing a lawful warrant on an individual named David Hodierne" and the detective answered "Yes, sir." (Respondent's Exhibit 1a at 596)  In answering another question a little later the detective stated that he "stood by with Mr. Hodierne the entire time the warrant was executed." (Respondent's Exhibit 1a at 606)  Defense counsel asserted no objection to either statement.  After the state presented the testimony of a third rebuttal witness and rested, defense counsel moved for a mistrial based on the violation of the stipulation, which motion the trial court denied.  (Respondent's Exhibit 1a 612)

During the trial, defense counsel never asserted that the denial of his motion for a mistrial violated a federally protected right.  On direct appeal Hodierne argued exclusively that the denial of the motion for a mistrial violated his rights under state law except for the following single, cursory reference: "*See* Amend. XIV, U.S. Const.; Art. I, section 9, Fla. Const.; *In re Winship*, 397 U.S. 358 (1970)." (Respondent's Exhibit 2 at 758)  Consequently, the alleged constitutional error in denying Hodierne's motion for a mistrial is unexhausted because the constitutional basis was not preserved and properly presented to the trial court (assuming the cursory reference was sufficient to exhaust the claim in the appellate court); only the state law basis for denying the motion for a mistrial was exhausted both at trial and on appeal.  As discussed above, enforcing state law issues is beyond a federal court's habeas review.

- 8 -

Moreover, the testimony that the jurors heard in contravention of the trial court's *limine* order — that a judge had issued a search warrant — was both factually accurate and typically admissible evidence.  The granting of Hodierne's motion *in limine* was within the trial court's discretion; the trial court would not have committed reversible error if the court had denied the motion *in limine* and allowed the state to present — during the prosecution's initial presentation of evidence — testimony that the search occurred under a judicially issued warrant — evidence that was revealed only in the prosecution's rebuttal.

**<u>Ground Five</u>**

Hodierne alleges that the re-sentencing court erred in striking papers he filed *pro se*.  Several weeks before the scheduled re-sentencing Hodierne filed two papers, the first captioned "*Pro Se* Motion to Disqualify" and the second captioned "Notice of *Pro Se* Status of Defendant."  (Respondent's Exhibit 6 at 828–30)  The motion to disqualify sought to have the judge removed from re-sentencing Hodierne, which motion the judge struck because Hodierne was represented by counsel — the order did not address the second paper.  (Respondent's Exhibit 6 at 831)  Later, at re-sentencing, the judge allowed Hodierne to proceed *pro se*.  Whether to allow a defendant to file a paper *pro se* while represented by counsel is a matter of state law.  Enforcing state law issues is beyond a federal court's habeas review.

## D. ALLEGED APPELLATE COURT ERROR

**Grounds One and Two**

Hodierne's conviction was affirmed on direct appeal but his sentence was reversed and remanded for a new sentencing hearing because the trial court truncated Hodierne's allocution before pronouncing sentence.  (Respondent's Exhibit 4)  After a re-sentencing hearing the trial court again sentenced Hodierne to life imprisonment, which was affirmed on Hodierne's second direct appeal.  (Respondent's Exhibit 14)  In addition to other post-conviction actions filed in the circuit court, Hodierne petitioned the appellate court for a writ of habeas corpus in which he alleged that he was denied the effective assistance of appellate counsel on the second direct appeal, that is, after the re-sentencing, which relief the appellate court denied.  (Respondent's Exhibits 18 and 20)  After additional post-conviction proceedings in the lower court, Hodierne filed a second petition alleging the denial of the effective assistance of appellate counsel, which the appellate court dismissed as untimely.  (Respondent's Exhibit 30 and 33)

In Ground One Hodierne alleges the claim of ineffective assistance of appellate counsel that he asserted in the second petition for habeas relief.  The claim faults appellate counsel for not asserting a claim of error that occurred during trial  — not during the re-sentencing — but was omitted from both the first direct appeal and the first petition alleging ineffective assistance of appellate counsel.  The appellate court dismissed the petition as untimely under Rule 9.141(d)(5), Florida Rules of Appellate Procedure, based on the date of finality of the first direct appeal.  (Respondent's Exhibit 33)

In Ground Two Hodierne alleges that the appellate court violated his due process rights by dismissing the second petition as untimely. In his motion for rehearing (Respondent's Exhibit 32) Hodierne argued that the petition was within the state's two-year limit if counted from finality of his re-sentencing (the second direct appeal). The appellate court denied rehearing without comment. (Respondent's Exhibit 34)

This district court cannot review whether the state appellate court correctly determined the timeliness of Hodierne's petition because a federal district court cannot directly review a state court's ruling; a federal district court does not sit as an appellate court to determine the correctness of a state court's ruling. *See Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) ("Federal habeas courts . . . do not grant relief, as might a state appellate court, simply because [a state court's error] under state law is not a basis for habeas relief."); *Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1299 (11th Cir. 2017) ("]I]t is not a federal court's role to examine the propriety of a state court's determination of state law."). Consequently, Ground Two fails to allege a federal claim reviewable under Section 2254, and the underlying claim of ineffective assistance of appellate counsel as alleged in Ground One is unexhausted because the claim was not fairly presented to the state courts in a timely action.

### E. ALLEGED POST-CONVICTION COURT ERROR

**Ground Seven**

Shortly before he filed his second habeas petition in the district court, which as discussed above was dismissed as untimely, Hodierne filed in the circuit court a motion under Rule 3.850, Florida Rules of Appellate Procedure, for post-conviction relief in which he alleged numerous claims of ineffective assistance of trial counsel. (Respondent's Exhibit 37)  The circuit court summarily denied the motion without an evidentiary hearing.  (Respondent's Exhibit 37 at 1581–1613)  The district court affirmed the denial of relief in a *per curiam* decision without a written decision. (Respondent's Exhibit 39)  In his unsuccessful motion for rehearing Hodierne argued that the circuit court "did not conclusively resolve each claim" as required by Rule 3.850(f)(5), Florida Rules of Criminal Procedure.  (Respondent's Exhibit 40 at 1744)

In Ground Seven Hodierne alleges that the circuit court failed to resolve each claim and that the district court failed to address the alleged failings of the circuit court. A challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment — that is, the conviction itself — and so habeas relief is unavailable.  "[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."  *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004).  *See also Carroll v. Sec'y, Dep't of Cor.*, 574 F.3d 1354, 1365 (11th Cir. 2009) (holding that a habeas applicant's claim — the state court violated his due process rights when summarily denying his post-conviction claim without an evidentiary hearing —

- 12 -

failed to state a claim on which a federal court can grant habeas relief); *Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006) ("We have held the state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief."). "Therefore, procedural violations during state post-conviction proceedings are 'issues unrelated to the cause of the petitioner's detention,' [and a]s such, they cannot form the basis for habeas relief." *Hill v. Humphrey*, 662 F.3d 1335, 1363 (11th Cir. 2011) (quoting *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)). Consequently, ground seven fails to allege a federal claim reviewable under Section 2254.

### F. ALLEGATIONS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his state court initial motion for post-conviction relief Hodierne alleged eighteen grounds (not including myriad sub-claims) of ineffective assistance of trial counsel. In a thirty-six-page decision the state court addressed each claim and directed Hodierne to correct certain deficiencies in an amended motion. (Respondent's Exhibit 37 at 1487) Hodierne's amended motion for post-conviction relief omitted a few grounds (and sub-claims) but nonetheless alleged fourteen grounds (not including myriad sub-claims). In a thirty-three-page decision the state court dismissed some claims and denied relief. (Respondent's Exhibit 37 at 1487) On appeal counsel alleged only one claim of ineffective assistance of trial counsel. (Respondent's Exhibit 38) After the district court affirmed the circuit court in a *per curiam* decision without a written opinion, Hodierne moved for rehearing and asserted entitlement to relief on

twenty-four claims that counsel had omitted. (Respondent's Exhibits 39 and 40) The district court denied rehearing.[4]

In his federal action Hodierne alleges twenty-seven claims (counting sub-claims) of ineffective assistance of trial counsel. However, only one claim — the claim Hodierne's counsel raised in the initial appellate brief — meets the exhaustion requirement. A claim initially asserted in a reply brief is too late under Florida law. *See e.g., General Mortgage Assoc., Inc. v. Campolo Realty & Mortgage Corp.*, 678 So.2d 431, 431 (Fla. 3rd DCA 1996) ("The fact that this issue was raised for the first time in the reply brief alone precludes our consideration of the matter."). *See generally*, 3 Fla. Jur. 2d *Appellate Review* § 229. The same preclusive effect also occurs in federal practice. *See e.g. Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) ("Because he raises that argument for the first time in his reply brief, it is not properly before us."). A claim initially asserted even later — in a motion for rehearing — is much too late. Consequently, only the ground of ineffective assistance of trial counsel identified as Ground Six, Sub-Claim 1, asserts a reviewable federal claim that is not procedurally defaulted.

\* \* \* \*

To summarize, Grounds One, Two, Three, Four, Five, all of Six except Sub-Claim 1, and Seven either fail to allege a federal claim reviewable under Section

---

[4] The state court record purports to contain a copy of the denial of rehearing at Respondent's Exhibit 41, but the image is another copy of the motion for rehearing located at Respondent's Exhibit 40. However, the district court's order denying rehearing is available on the circuit court's website with a search under Hodierne's name at "www.civitekflorida.com/ocrs/county51/" at docket entry #356.

2254 or are procedurally defaulted because Hodierne either never presented the federal claim to both the trial and the appellate courts or he presented the claim in an incorrect manner.

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."). State procedural rules preclude Hodierne from returning to state court to present his federal claim in yet another direct appeal or another Rule 3.850 motion for post-conviction relief. *See* Fla. R. App. P. 9.140(b)(3) and Fla. R. Crim. P. 3.850(b) and (h)(2). Hodierne's failure to properly present his federal claims in the state court results in a procedural default. *See Shinn v. Ramirez,* 596 U.S. 366, 378 (2022) (noting that if a prisoner failed to present a federal claim to the state court and the state court would dismiss the claim based on a procedural failure, the claim is technically exhausted because, in the habeas context, "state-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.") (quoting *Woodford v. Ngo,* 548 U.S. 81, 92–93 (2006)).

As determined above, Hodierne procedurally defaulted Grounds One, Two, Three, Four, Five, all of Six except Sub-Claim 1, and Seven by not timely and fairly presenting each ground to both the trial and the appellate courts. As a consequence, each ground is barred from federal review absent a showing of "actual cause and prejudice" or "manifest injustice." *See generally Coleman v. Thompson*, 501 U.S. 722, 747–51 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The basis for "cause" must ordinarily reside in something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the applicant must show "not merely that the errors at his trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (italics original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

To meet the fundamental miscarriage of justice exception, Hodierne must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying a certificate of probable cause).

Hodierne establishes neither "cause and prejudice" nor a "fundamental miscarriage of justice." Therefore, Grounds One, Two, Three, Four, Five, all of Six

except Sub-Claim 1, and Seven are procedurally barred from federal review and not entitled to a determination on the merits.[5]

### III.  CLAIM REVIEWABLE ON THE MERITS

The only claim entitled to a review on the merits is Ground Six, Sub-Claim 1, which alleges that re-sentencing counsel should have withdrawn due to a conflict of interest.

### A.  STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the

---

[5] Even if entitled to a review on the merits, each claim lacks merit under federal habeas review.

merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "To meet that standard, a prisoner must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312,

- 18 -

316 (2015) ("And an 'unreasonable application of ' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues a reasoned and explanatory opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained

decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson,* 584 U.S. at 125. The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson,* 584 U.S. at 125.

In a *per curiam* decision without a written opinion the state appellate court affirmed the denial of Hodierne's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 39) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec., Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Bishop v. Warden, GDCP*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary

> to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Hodierne bears the burden of overcoming by clear and convincing evidence a state court's determination of fact. "[The] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001). The state post-conviction court's rejection (Respondent's Exhibits 37 at 1581–1613) of Hodierne's claim warrants deference in this federal action. Hodierne's federal application presents the same claim of ineffective assistance of counsel that he exhausted in both the post-conviction court and the appellate court.

## B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Hodierne claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim, as *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court

- 21 -

set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

An applicant must prove both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Hodierne must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 690.  To meet this burden, Hodierne must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  *See Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1041–42 (11th Cir. 2022) (*en banc*) (brackets original) ("Applying AEDPA to *Strickland*'s prejudice standard, we must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [petitioner] — that there was no substantial likelihood of a different result — was so obviously wrong that its error lies beyond any possibility for fairminded disagreement.") (internal quotation marks omitted).

Under Section 2254(d), Hodierne must prove that the state court's decision "(1) [was] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105; *see also Dunn v. Reeves*, 594 U.S. at 739 ("This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately."); *Pinholster*, 563 U.S. 202 (recognizing that an applicant  must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA"); *Nance v. Warden, Ga.*

*Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)); *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'").  "And in reviewing the work of their peers, federal judges must begin with the 'presumption that state courts know and follow the law.'  Or, in more concrete terms, a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision." *Reeves*, 594 U.S. at 739–40 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), and *Richter*, 562 U.S. at 101) (italics and brackets original).

In summarily denying Hodierne's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 37 at 1582)  Because the state court rejected the claim based on *Strickland*, Hodierne cannot meet the "contrary to" test in Section 2254(d)(1). Hodierne instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," the statute limits federal review to determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not to independently assess whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001).

The presumption of correctness and the highly deferential standard of review requires that the analysis of Hodierne's claim of ineffective assistance of counsel begin with the state court's analysis.

## C. DISCUSSION

In both his initial and amended motions for post-conviction relief — as well as in his federal application — Hodierne alleged that his counsel at re-sentencing rendered ineffective assistance by not withdrawing from representing Hodierne because she had a conflict of interest. The post-conviction court denied this claim with the following discussion (Respondent's Exhibit 37 at 1584) (brackets and ellipsis original):

> First, Defendant claimed that one of his attorneys, Cynthia Bryant, was ineffective for failing to "move to withdraw after informing [him] of concerns regarding professional career interests for association with [his] case." Having submitted an amended motion, Defendant alleges that counsel Bryant was ineffective for failing to withdraw after she "expressed genuine concern and reluctance about handling the case because she did not want to suffer the same treatment that Robin Allweiss . . . endured, when Bryant felt that attacking Judge Webb's ethics would result in unfavorable partiality by Judge Webb here, and in future proceedings in which she appears." Defendant claims that but for her failure to withdraw there is a reasonable probability of a different outcome in the proceedings because he "never received a complete determination of the cause when Bryant adversely affected him by not adopting the motion to [disqualify Judge Webb], as expressly desired . . . ." He alleges that this failure caused him to choose to proceed *pro se* for resentencing.
>
> As with his initial motion, Defendant's claim remains jumbled and difficult to parse. He claims to suffer prejudice for counsel's failure to withdraw and simultaneously suffer for proceeding *pro se*. His claim is not only nonsensical, it is contradictory; and it continues to fail to properly allege with specificity any prejudice. *Cf Munoz v. State*, 2 So. 3d 1087, 1088 (Fla. 3d DCA 2009) (denying a claim in a motion for post-conviction relief where the claim is contradictory to another claim within the motion). Additionally, at the time Bryant was appointed, the motion to disqualify was already denied and she could not have adopted it.

- 25 -

> The Court finds that this is not a matter of "form" but of "substance," and Defendant has failed to properly allege prejudice, or allege prejudice at all. *See Spera v. State*, 971 So. 2d 754, 761 (Fla. 2007) ("The striking of further amendments is subject to an abuse of discretion standard that depends on the circumstances of each case.").

Neither the post-conviction court's determination of an absence of prejudice nor the court's application of *Strickland* were unreasonable. Hodierne complains that post-conviction counsel should have moved to withdraw from representing Hodierne at the re-sentencing. As discussed earlier under Ground Five, Hodierne filed a paper captioned "Notice of *Pro Se* Status of Defendant" (Respondent's Exhibit 6 at 830) and the court allowed Hodierne to proceed *pro se* at the re-sentencing. Consequently, re-sentencing counsel withdrew as Hodierne wanted even though counsel filed no motion. Hodierne fails to show that he was prejudiced by counsel having not filed the motion.

## V.  **CONCLUSION**

Hodierne fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), states:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a

> State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Grounds One, Two, Three, Four, Five, all of Six except Sub-Claim 1, and Seven are dismissed as procedurally barred from federal review. Hodierne's application for the writ of habeas corpus (Doc. 1) is **DENIED** based on Ground 6, Sub-Claim 1. The clerk must enter a judgment against Hodierne and **CLOSE** this case.

## DENIAL OF BOTH
## A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Hodierne is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Hodierne must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would "find debatable" either the merits of the grounds or the procedural issues, Hodierne is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Hodierne must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 31, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE